CASE 21—PETITION ORDINARY—SEPT. 28.

# Buford v. Speed.

### APPEAL FROM FRANKLIN CIRCUIT COURT.

1. ALIEN ENEMY MAY HAVE AGENT FOR SOME PURPOSES.—A person serving in the army of one belligerent can not have an agent within the territory of the other to transact ordinary business, but he may for some purposes, (Ward v. Smith, 7 Wall. 452; Montgomery v. United States, 15 Wall. 492.)

2. ALIEN MAY APPEAR IN COURT WITH COUNSEL AND DEFEND.—The provision of the Federal constitution declaring that "no person shall be deprived of life, liberty, or property without due process of law" is applicable to alien enemies, and gives them the right when proceeded against by legal process to appear in person or by counsel, whom they have a right to employ, and to introduce evidence and make defense.

3. WIFE MAY BE AGENT FOR HER HUSBAND.—Where a husband left his wife in possession of his property and joined the Confederate army, and proceedings to confiscate his property were instituted in the Federal court under the act of congress, the wife had authority, by implication of law, to employ the ordinary means of making defense, by hiring and contracting to pay counsel, and he is bound by her action, whether she had express authority or not.

4. A TRUST MAY BE CREATED IN FAVOR OF AN ALIEN ENEMY, which he may enforce after the cessation of hostilities. (Crutcher v. Hord, 4 Bush, 368; Roach v. Hudson, 8 Bush, 410.)

T. N. & D. W. LINDSEY, . . . . . . . . For Appellant,

### CITED

Halleck on Laws of War, 357.
Confiscation Act of Congress of 1862.
Clancy on Husband and Wife, pp. 359, 360, 361.
3 Kent, 36.
5 J. J. Mar. 230, Long's adm'r v. White's adm'r.
10 B. Mon. 322, Coleman v. Wooley.
13 B. Mon. 383, Bill & Terry v. Kellar.
11 Wall. 306, Miller v. United States.

JAMES SPEED, . .
THOS. P. PORTER,
A. J. & D. JAMES,
G. W. CRADDOCK,

. . . . . . . . . For Appellee,

CITED

Story on Agency, secs. 118, 141, 193, 194, 237, 250.
Douglas's Paley on Agency, 171.
7 Cranch, 603, Fairfax's devisee v. Hunter's lessee.
3 Wheat. 594, Craig v. Radford.
9 Wall. 72, United States v. Grossmayer.
3 Phillimore on International Law, p. 733.
4 Bush, 360, Crutcher v. Hord and wife.
8 Bush, 271, L. & N. R. R. Co. v. Buckner.
7 Bush, 179, New York Life Ins. Co. v. Clopton, &c.
7 Bush, 16, Haggard v. Conkwright.
7 Wall. 452, Ward v. Smith.     .     10 Wend, 79.
5 Littell, 53, Moore v. Simpson.
3 Met. 434, Denton v. Logan.
15 Wall. 395, Montgomery v. United States.
17 Vesey, 71, *Ex parte* Bourmaker.
11 Wall. 259, McVeigh v. United States.
100 Mass. 561, Kurshaw v. Kelsey.

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

In the year 1862 the appellant Buford was the owner of a large and very valuable farm situated in Woodford County, on which he then resided with his family, consisting of his wife and only child, then a minor. In the fall of that year he left his wife and child residing on the farm and entered the Confederate army, and remained absent from home until the close of the war in 1865.

Some time in 1863 Mrs. Buford and the friends of herself and her husband became apprehensive that his estate would be libeled for condemnation under the act of congress providing for the confiscation of the property of those engaged in rebellion, and discussed plans for preventing the loss of the estate. She advised with counsel, and it was finally decided that, as Buford was indebted in a considerable amount, the most feasible plan for accomplishing the end in view was to induce his

creditors to sue out attachments and levy on the land and have it sold and purchased in by friends who could intervene as claimants to defeat any proceedings that might be instituted for condemnation. This plan was pursued, and the entire farm, consisting of two tracts, one of 175 and the other of 260 acres, was sold and purchased by Woodward. He purchased the 175 acre tract as trustee for Mrs. Harris, and the 260 acre tract at a nominal sum for the benefit of Buford and his family. After the sale the question was discussed between Woodward and Mrs. Buford and her attorney, Governor Porter, as to how the conveyance of the 260 acres should be made so as to protect the land from future seizure, and it was determined that Woodward should convey to Hord, to be held by him for the benefit of Mrs. Buford and her son, and such children as might thereafter be born to her and her then husband; but whether any such conveyance was ever made does not certainly appear, but we will assume for the purposes of this decision that a conveyance was made as agreed upon.

Both tracts were subsequently libeled for confiscation as the property of·Buford, and it became necessary to make defense against that proceeding, and Mrs. Buford, upon the advice of her counsel, authorized him to employ Speed & Smith, attorneys, residing and practicing at Louisville, where the proceeding against the land was pending, to aid in the defense.

The terms of the employment and the amount of the fee to be paid were agreed upon and reported to Mrs. Buford, and approved by her.

Claim to the 260 acres was filed in the district court by Speed & Smith, and Porter, in the names of Mrs. Buford and her son, and also in the name of Hord as trustee for them, and of Woodward, the purchaser at the attachment sale; but no claim was filed for Buford, because, as the evidence shows, according to the decision of the district court the defendant being a public enemy had no *locus standi* in court, and there-

fore could not make defense, but a traverse was entered for him which made it necessary that the government should make out a case by proof.

The proceeding was finally dismissed, and in 1868 Speed as surviving partner (Smith having died in the meantime) brought this suit against Buford to recover the fee agreed to be paid, and, judgment having been rendered for the amount agreed upon, Buford prosecutes this appeal.

The only question we deem it important to discuss is whether Mrs. Buford had authority to bind her husband to pay to counsel a fee for defending in the confiscation proceedings.

It is insisted that she had no such authority; *first*, because Buford being within the Confederate states and actually serving in their armies, and Speed & Smith being within the Federal lines and residents in an adhering state, no valid contract could be made between them; and *secondly*, because Buford, having been divested by the sale of title to the land, had no legal interest in the result of the proceedings, but that as the land was then held in trust for Mrs. Buford and her son the services rendered by counsel were for them and not for the husband and father.

We will dispose of these questions in their order.

1. It is undoubtedly true that a person serving in the army of one belligerent can not have an agent within the territory of the other belligerent to transact ordinary business. But it is equally true that he may have an agent in the enemy's country for some purposes.

It was distinctly held in Ward v. Smith (7 Wall. 452) that a bank which had been appointed the agent of the creditor before the commencement of the war, to collect certain bonds, might lawfully receive payment pending the war, although the creditor was then a public enemy. And the same doctrine was again recognized in Montgomery v. United States (15 Wall. 395).

These cases show that the rule that a belligerent can not have an agent in the enemy's country, like most other general rules, is subject to exceptions; and although this case is not embraced by the exception just noticed, we think it is nevertheless clearly an exception.

The fifth article of amendments to the constitution of the United States, among other things, declares that "no person shall be deprived of life, liberty, or property without due process of law."

It is useless at this late day to argue or to cite authority to prove that due process of law embraces citation in some form, with the right to appear in person or by counsel, and to introduce evidence and make defense.

In the case of McVeigh v. United States (11 Wall. 266) Mr. Justice Swayne, in delivering the unanimous opinion of the Supreme Court in a case exactly like that against Buford in the district court, uses this emphatic language on the subject of the right of one whose property had been libeled for confiscation, under the same act under which Buford's land was proceeded against, to make defense: "It was alleged that he (McVeigh) was in the position of an alien enemy, and hence could have no *locus standi* in that forum. *If assailed there he could defend there.* The liability and the right are inseparable. A different rule would be a blot upon our jurisprudence and civilization. We can not hesitate or doubt on the subject. It would be contrary to the first principles of the social compact and the right administration of justice."

Having a right to make defense, it follows that Buford had a right to employ counsel, for without counsel no defense could be made. In order to secure counsel he must have had a right to contract with attorneys residing within the enemy's country where the court was sitting in which the counsel was to appear, and to pay them for their services, otherwise the established right to make defense is a delusion and a mockery.

This brings us to the question whether Mrs. Buford had authority to employ counsel to represent her husband in court.

He had left her residing on the property, and had not authorized any one else to represent him in the capacity of agent, so far as appears in the record. Her possession was his possession, and when that possession was assailed at a time when it was unlawful for her to communicate with him without the license of the government, and when it may not have been practicable to do so, she had authority *ex necessitate rei* by implication of law to employ the ordinary means of making defense by hiring and contracting to pay counsel, and he is bound by what she did, whether she had express authority or not. There can be no doubt but that under such circumstances it would be both the right and duty of the wife to employ counsel to protect the interest of her absent husband.

That he had a legal subsisting interest in the property we think is clear, even upon the assumption that a conveyance had been made from Woodward, the purchaser, to Hord in trust for Mrs. Buford and her son, and such children as she might thereafter have. Such conveyance did not divest Buford of his right to enforce the trust created in his favor by Woodward's purchase, which is proved to have been made for him (Buford) and his family.

That trust was originally enforceable, notwithstanding he was then a public enemy, as was decided by this court in Crutcher v. Hord and wife (4 Bush, 368), and in Roach v. Hudson (8 Bush, 410).

The conveyance to Hord was voluntary, and the trust could have been enforced against him and his *cestuis que trust* as fully as against Woodward, and Buford had therefore a personal interest in defeating the proceedings to confiscate the land.

The whole proceeding, including the sale and purchase of the land and the conveyance to Hord in trust for Mrs. Buford

and her child or children, seems to have been intended to protect the interest of her husband and to have been conducted in good faith in order to accomplish that end. It is not pretended that there was any purpose on the part of any one concerned to injure the rights of Buford, or that any one has or can assert title growing out of these proceedings against him.

The evidence shows that after his return in 1865 he complimented his wife for the manner in which she had conducted his affairs in his absence, and that he has since, by contracts in his own name, erected an expensive house on the land and has been residing on, controlling, and using it as his own.

Under all the circumstances we regard the instructions of the court as quite as favorable to the appellant as the law permitted, and we must therefore affirm the judgment.