### Rau, et al. v. Rowe.

(Decided June 20, 1919.)

## Appeal from Fayette Circuit Court.

1. **Aliens—Right of Alien Enemy to Institute Action.**—Although an alien of enemy nationality resident in his own country can neither institute an action in a court of the country with which

his own is at war, during the continuance of the war, nor pros-
ecute one instituted before its commencement, such disability
continues only while he is abiding in his own country and does
not exist where he is permitted to enter and remain in the country
in which suit is brought, unless while therein he is carrying on
trade with the enemy country, is a spy or has been guilty of
other acts of hostility.

2.  Aliens—Becoming Alien Enemy Pending Action—Authority of
Court.—Where during the pendency of an action, the plaintiff
becomes an alien enemy, the court is without legal authority to
render judgment; and in such state of case a judgment rendered
in a cause commenced before the beginning of the war, can have
no legal validity.

3.  Aliens—Where Action Commenced by Before War.—In some jur-
isdictions the rule is that, where an action has been commenced
before the war, the proceedings will be only suspended; but if
instituted after the beginning of the war, it will be dismissed.
In yet other jurisdictions it has been held that, where the plain-
tiff becomes an alien enemy after the institution of the action,
it should be continued on the docket until the war ends or
dismissed without prejudice.

4.  Aliens—Alien Enemy—Right of Defense to Action.—The liability
of an alien enemy to be sued, carries with it the right to use all
the means and appliances of defense that might be employed by
a resident citizen of the country in which the action is brought.
Although the existence of war closes the courts of each bel-
ligerent to the citizens of the others, it does not prevent the citi-
zens of one belligerent, when sued, from taking proceedings for
the protection of their own property against the citizens of the
other bringing the actions.

5.  Aliens—Rights of Heirs at Law of Alien Enemy.—Where by the
death of an intestate and childless citizen and resident of this
state and country his estate, both real and personal, subject to the
widow's right to dower in the realty and one-half of the surplus
personalty, descended under the statute to the sisters, nephew
and nieces of the decedent as his only heirs at law, all residents
of Germany, and the latter upon being made defendants to an
action for a settlement and distribution of the estate, brought
in a court of this state by the administratrix prior to the com-
mencement of war between this country and Germany, filed
therein an answer resisting the allowance of certain claims against
the decedent's estate, sought to be recovered by the widow in
addition to her share thereof under the statute, the subsequent
beginning and existence of the war between this country and
Germany did not interfere with the right of the heirs at law to
continue their defense to and resistance of the widow's demands
against the estate of the decedent, or prevent them from pros-
ecuting the present appeal to the Court of Appeals from the
judgment of the circuit court, later rendered, allowing certain

of such demands. An appeal from an alleged erroneous judgment is a means or appliance of defense just as open to an alien of an enemy country, when sued in a court of the hostile country, as if he were a resident citizen thereof.

GEORGE B. WEBB for appellants.

R. J. COLBERT and R. L. ROTHCUTT for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Sustaining demurrer to plea in abatement.

One H. L. Rau, a native of Germany, came to the United States in youth or early manhood, established his residence in the city of Lexington, this state, and changed his name from Rau to Rowe. Whether he became a naturalized citizen of this county does not appear, but he resided in Lexington until his death, in January, 1913, having in the meantime accumulated considerable property, consisting mainly of real estate, some of which he owned individually and some of it jointly with his wife, Nellie B. Rowe, to whom he was married in 1882. He died intestate and childless, but was survived by his wife, three sisters, the appellants, Sophie Rau, Julia Rau, Lina Lohss, and the infant appellants, Margaret Rau and others, children of his deceased brother, Frederick Rau. As the sisters and children of the deceased brother were the nearest relatives and only heirs at law of the decedent his entire estate descended to them under the statute, subject to the payment of his debts, the widow's right to one-half of the surplus personal property and her right to dower in the real estate.

Shortly after the death of the decedent, his widow, the appellee, Nellie B. Rowe, by an order of the Fayette county court, was appointed and duly qualified as administratrix of his estate, following which she brought this action in the Fayette circuit court to obtain an allotment to her of dower in the real property left by the decedent and a settlement of the estate. The heirs at law named above were made defendants to the action, and as they were and are all residents of the German Empire they were proceeded against as non-residents and constructively brought before the court. Upon being brought before the court, appellants filed a joint and several answer in which they concurred in the appellee's prayer for a settlement of the estate, but controverted certain

individual demands, and admitted others, set up by her in the petition and claimed as indebtedness due her from the decedent's estate. By the judgment of the circuit court she was allowed all of these claims. An appeal was taken to the Court of Appeals by the heirs at law from that judgment and the judgment reversed by the latter court. (See Rau, et al. v. Rowe's Admr., et al., 168 Ky. 704.) Upon the return of the case to the circuit court other claims were filed against the estate by appellee, which were in turn contested by appellants, but that court again rendered judgment in favor of appellee, from which the heirs at law were granted and are prosecuting the present appeal.

Following appellants' filing of a transcript of the record in this court for the purpose of perfecting their appeal, appellee seeking its dismissal, filed therein an answer, containing a plea in abatement, in which it is alleged that appellee is a native and citizen of the United States and has never resided elsewhere, but that the appellants, including the four infants and their guardian, "each were at the time this appeal was granted, and now is, an alien enemy of the United States of America; that each of said appellants is, and was at the time this appeal was granted, a citizen and resident of the German Empire and subject of the Emperor of Germany, and that each of said appellants at the time this appeal was granted resided, and now resides, in said German Empire. And appellee says that by reason of the state of war now existing between the United States of America and the German Empire this appeal should be abated; and she prays for this and all other proper relief." Appellants filed a general demurrer to the answer and plea in abatement, and the case is now under submission on this plea and the demurrer thereto.

It appears from the record that this action, which affects property admittedly inherited by appellants from their deceased relative, H. L. Rowe, and attempts to subject a large part of it to demands of appellee in excess of her share under the statute as widow, was brought and the defense of appellants thereto made, before war was declared between the United States and Germany, though the judgment complained of on this appeal was rendered after war was declared. So the question we are called on to decide is, whether the appellants, nonresident aliens though they be, who have been made de-

fendants to an action brought in a court of this country and deprived of their property by an alleged erroneous judgment of that court, are barred of the right of appeal to obtain its correction, by the existence of a state of war beween this country and theirs, which began after the institution of the action.

From the multitude of cases found on this subject the following general principles seem to have received full recognition in England, Canada and the United States. First, that a person of enemy nationality resident in his own country can neither institute an action in the courts of the country with which his own is at war, during the continuance of the war, nor prosecute one instituted before its commencement, but such disability continues only while he is abiding in his own country, and consequently does not exist where he is permitted to enter and remain in the country in which suit is brought, unless while therein he is carrying on trade with the enemy country, is a spy or has been guilty of other acts of hostility. Brandon v. Nesbill, 2 Eng. Rul. Cas. 649; Robinson v. Cont. Ins. Co., 1 K. B. (Eng.) 155; Dumenko v. Swift Canadian Co., 32 Ont. L. Rep. 87; Dougler v. Hollinger Gold Mines, 34 Ont. L. Rep., 78; Crawford v. The William Penn Pet, C. C. Fed. Case, No. 3372; Russ v. Mitchell, 11 Fla. 80; Seymour v. Bailey, 66 Ill. 288; Perkins v. Rogers, 35 Ind. 124; Dorsey v. Thompson, 37 Md. 25; Levine v. Taylor, 12 Mass. 8; De Jarnert v. DeGenervill, 56 Mo. 440; Sanderson v. Morgan, 39 N. Y. 231; Wilcox v. Henry, 1 Dall, U. S. S. Ct. 69. Second, that where during the pendency of an action, the plaintiff becomes an alien enemy, the court is without legal authority to render judgment; and in such state of case a judgment rendered in a cause commenced before the beginning of the war can have no legal validity. In some jurisdictions the rule is that, where an action has been commenced before the war, the proceeding will be only suspended; but if instituted after the beginning of the war it will be dismissed. In yet other jurisdictions it has been held that where the plaintiff becomes an alien enemy after the institution of the action, it should be continued on the docket or dismissed without prejudice. Hutchison v. Brock, 11 Mass. 119; Bell v. Chapman, 10 Johns (N. Y.) 183; Korziniske v. Harris Cont. Co., 18 Quebec Pr. Rep. 97; Whelan v. Cook, 29 Md. 1; Howes v. Chester, 33 Ga. 89; Stumpf v. A. Schrilber Brewing Co., 242 Fed.

Rep. 80. Third, that the liability of an alien enemy to be sued carries with it the right to use all the means and appliances of defense that might be employed by a resident citizen of the country in which the action is brought. In other words, although the existence of war closes the courts of each belligerent to the citizens of the other, it does not prevent the citizens of one belligerent when sued from taking proceedings for the protection of their own property against the citizens of the other when sued by the latter, for the reason of policy which suspends the right of action of an enemy alien during the war cannot and does not apply where the suit is not by one of the enemy to collect his own resources, but to subject the property of the alien to a demand asserted against him. As said in Russ v. Mitchell, 11 Fla. 80: "It would be revolting to the rules of justice which govern a court, to drag therein a party and then say to him, 'although you are properly before the court, you are an alien enemy and shall not be heard, yet judgment shall be rendered against you.'"

In Dorsey v. Thompson, 37 Md. 25, the rule referred to is stated as follows:

"Whether the grounds of the defense of an alien enemy be the possible benefit that might result to the enemy from allowing the plaintiff to recover, or the want of claim or right to the use of the courts of the country by the plaintiff in consequence of his status as an enemy, the reason that created the disability of the party as plaintiff does not apply to him as defendant. As plaintiff the party attempts to exercise a privilege that he has forfeited at least for the time, but, as defendant, he is sought to be made amenable for what justice may require of him. The mode and manner of acquiring jurisdiction and making the proceedings binding on him is another and different question from that of his total exemption from suit pending hostilities. This depends upon the remedial processes of the courts, and, as is well known, they are generally wholly inadequate during a state of actual war in suits *in personam,* to furnish the foundation for exercising jurisdiction of alien enemies residing in the enemy's territory. But still these enemies are liable to be sued if within the reach of process." McNair v. Toler, 21 Minn. 175; Telephonie Sans Fil v. U. S. Service Corp., 84 N. J. Eq. 604; Griswold v. Waddington, 15 Johns (N.

Y.) 69; Masterson v. Howard, 18 Wall (U. S.) 99; Porter v. Freudenberg, 1 K. B. (Eng.) 857.

A leading case on the question under consideration is that of McVeigh v. United States, 78 U. S. (L. Ed.) 259-268 (11 Wall 259), the action being one brought during the "Civil War" under an act of Congress passed in 1862, to confiscate for the purposes of the United States government certain property within its territory belonging to McVeigh, then a resident of the city of Richmond, Virginia, within the Confederate 'lines and designated a "Rebel." Being constructively in court McVeigh filed an answer asserting his right to the property and resisting that of the United States to deprive him of it. The court below struck the answer from the files and entered a decree for the sale of the property. In reversing the judgment and setting aside the sale of the proprty, the Supreme Court of the United States, in part, said:

"In our judgment the district court committed a serious error in ordering the claim and the answer of the respondent to be stricken from the files, as we are unanimous in this conclusion, our opinion will be confined to that subject. The order in effect denied the respondent a hearing. It is alleged that he was in the position of an alien enemy, and the answer could have no *locus standi* in that forum. If assailed there he could defend there. The liability and the right are inseparable. A different rule would be a blot upon our jurisprudence and civilization. . . . Whatever may be the extent of the disability of an alien enemy to sue in the courts of the hostile country, it is clear that he is liable to be sued, and this carries with it the right to use all the means and appliances of defense."

In the subsequent case of Winsor v. McVeigh, 93 U. S. (Law Ed.) 274, involving the title to the same property the case of McVeigh v. U. S., *supra,* was cited and the above principle therein announced was approved in the following language:

"Wherever one is assailed in his person or his property, there he may defend, for the liability and the right are inseperable. This is a principle of natural justice recognized as such by the common intelligence and conscience of all nations."

In the still later case of Hovey v. Elliott, 167 U. S. (Law Ed.) 45, the Supreme Court of the United States

cited the McVeigh case and after discussing at length numerous authorities, strongly approved its statement of the doctrine in question.

In Buford v. Speed, 11 Bush 338, we held (quoting from the syllabus):

"That the provisions of the Federal Constitution declaring that 'no person shall be deprived of life, liberty, or property without due process of law,' is applicable to alien enemies, and gives them the right, when proceeded against by legal process, to appear in person or by counsel, whom they have a right to employ, and to introduce evidence and make defense;" and further, that "Where a husband left his wife in possession of his property and joined the Confederate army and proceedings to confiscate his property were instituted in the Federal Court under the act of Congress, the wife had authority by implication of law, to employ the ordinary means of making defense, by hiring and contracting to pay counsel, and he is bound by her action, whether she had express authority or not."

In support of the proposition first stated the opinion cited and strongly relies upon McVeigh v. United States, *supra,* as the following excerpt therefrom will indicate:

"In the case of McVeigh v. United States, Mr. Justice Swayne, in declaring the unanimous opinion of the Supreme Court in a case exactly like that against Buford in the district court, uses this emphatic language on the subject of the right of one whose property had been libeled for confiscation under the same act under which Buford's land was proceeded against, to make defense, 'it was alleged that he (McVeigh) was in the position of an alien enemy, and hence could have no *locus standi* in that forum. If assailed there he could defend there. The liability and the right are inseparable. *A different rule would be a blot upon our jurisprudence and civilization.*' We cannot hesitate or doubt on the subject. It would be contrary to the first principles of the social compact and the right administration of justice."

We have been referred to no case which shows a departure from the doctrine announced by the authorities, *supra.* But counsel for appellee, while conceding that the rule, *supra,* permitted the defense made by appellants in the circuit court, insists that it does not permit the prosecution by them of an appeal from the judgment of

that court. In other words, it is their contention that by taking the appeal the relation of appellants to the action is, for some reason unexplained, so changed that they become plaintiffs instead of defendants, which change brings them within the rule declaring that the right of action of an alien enemy is suspended by war during its continuance. No authority is cited which supports this contention, and it is apprehended that none can be found.

It is illogical, indeed absurd, for the appellee to say that although appellants, because of their ownership of the property attempted to be subjected to her demands, were necessary parties to the action and were made so by her act and by reason thereof put in a position to defend their right to the property as against her demands, yet the exercise of such right of defense is restricted to the circuit court, and however erroneous its judgment may be or prejudicial to appellants' substantial rights, they are prevented by the war existing between this country and Germany from obtaining any relief against its injustice by an appeal to a higher court, although such right of appeal might be freely exercised by appellee if the judgment were prejudicial to her. To give such a meaning to the law would be but a mockery of justice. We regard as more consonant with justice the rule announced by the Supreme Court of the United States in McVeigh v. United States, *supra*:

"Whatever may be the extent of the disability of an alien enemy to sue in the courts of the hostile country, it is clear that he is liable to be sued, *and this carries with it the right to use all means and appliances of defense.*"

That an appeal from an erroneous judgment is a means and appliance of defense is too clear to require argument, and if the judgment here complained of be erroneous, as claimed by appellants, it is equally clear that their only means of correcting the errors it contains is by the appeal they have brought to this court.

It should be remarked that appellants are not seeking a recovery of any amount against appellee. Their right as heirs at law of the decedent to the estate left by him, subject to the dower and personalty which the law allows the appellee as widow, is conceded. The only contest is as to certain individual demands alleged to be due appellee from the decedent's estate which she insists shall

be paid out of the estate before any of it is distributed to the appellants, and these are the claims they seek to defeat. If appellants were asserting debts against the estate, whether as independent claims or by way of counterclaim or set-off, it might present a question of more perplexing character than any we have considered, for in some jurisdictions it has been held that though a nonresident alien may be made a defendant and make his defense he may not prosecute a counterclaim or set-off, but as we have no such question here it is needless to discuss it.

The relation of appellants to this case being purely defensive, there is nothing in the law that will prevent them from relying upon any ground of defense or remedy in resistance of appellee's claims referred to, that might be pleaded or relied upon by a resident citizen of this country with like rights in the estate of the decedent. It is true that there might arise in the future some question as to appellants' right to obtain possession of and carry out of this country such part of the decedent's estate as may be adjudged them, until peace has been formally declared between the United States and Germany, as it is the policy of the law not to permit alien enemies in time of war to carry out of the country property with which to enrich the enemy. But in such state of case it seems to be the rule that the property shall be retained in the custody of the court rendering the judgment, or of the government, until the restoration of peace and of the right of the owner to take it in possession. This, however, is a matter which does not concern us in passing on the question raised by the demurrer to the plea seeking the dismissal of the appeal. As appellants clearly have the right to prosecute the appeal brought by them to this court, their demurrer to the answer of appellee containing the plea in abatement is sustained.

As briefs on the merits of the case have not been filed by counsel nor the appeal submitted on the merits, we have made no attempt to review the judgment of the circuit court or any question that should properly be determined following the submission of the appeal. The whole court sitting.